FUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CAROLYN ANN FETES,

             18-CV-990-MJR
             DECISION AND ORDER

     Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,

     Defendant.

---

   Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15).

   Plaintiff Carolyn Ann Fetes brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security finding her ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Fetes's motion (Dkt. No. 10) is denied, the Commissioner's motion (Dkt. No. 13) is granted, and this case is dismissed.

## BACKGROUND

   On August 15, 2016, Fetes filed protectively an application for DIB, alleging disability as of October 28, 2015, due to chronic fatigue, major depression and fibromyalgia. (Tr. 139, 185).[1] Her application was denied on December 29, 2016. (Tr. 15, 83-89). On January 26, 2017, Fetes requested a hearing before an administrative

---

[1] References to "Tr." are to the administrative record in this case.

law judge ("ALJ"). A hearing was held before ALJ Paul Georger in Buffalo, New York, on July 28, 2017. Fetes appeared, along with her counsel. A vocational expert also appeared. On September 27, 2017, the ALJ issued a decision finding Fetes not disabled. (Tr. 15-30). That decision became final when on July 11, 2018, the Appeals Council denied her request for review. (Tr. 1-6). This action followed.

## DISCUSSION

### I.   Scope of Judicial Review

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to

appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work

experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III.  *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating disability claims. Under step one, the ALJ found that although Fetes had engaged in substantial gainful activity from March 9, 2016 through June 28, 2016, there also had been a continuous twelve-month period during which she did not engage in substantial gainful activity. (Tr. 19). At step two, the ALJ concluded that Fetes has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, fibromyalgia, obesity, a depressive disorder, and an anxiety disorder. (Tr. 19-20). At step three, the ALJ found that Fetes does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 20-23). Before proceeding to step four, the ALJ assessed Fetes's RFC, in pertinent part, as follows:

> The claimant has the residual functional capacity to perform light work . . . because claimant is able to lift, carry, push, and/or pull twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. In addition, the claimant is limited to simple, routine tasks and simple work-related decisions, and she is frequently able to respond appropriately to supervisors, co-workers, and the public.

(Tr. 23-24). Proceeding to step four, the ALJ found that Fetes is unable to perform past relevant work. (Tr. 28). At step five, the ALJ found that, considering Fetes's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she is able to perform, namely, Mail Clerk, Production Assembler and Inspector. (Tr. 29-30). Accordingly, the ALJ concluded that Fetes is not disabled under the Act. (Tr. 30).

## IV.  *Fetes's Challenges*

First, Fetes argues that the ALJ's weighing of the of her treating physician, Naturopathic Medicine Doctor Marshall Lim, ND, MSOM, was inadequate pursuant to 20 C.F.R. § 404.1527 for assessing treating physician's opinions (Tr. 25). The Court finds this argument without merit.

Dr. Lim, as a naturopathic doctor, is not considered an acceptable medical source under the Social Security regulations. Acceptable medical sources are defined in 20 C.F.R. § 404.1513(a). Only licensed physicians who are medical or osteopathic doctors are acceptable medical sources. 20 C.F.R. § 404.1513(a)(1). Thus, a naturopathic doctor is a non-medical source and opinions from such a source cannot be given controlling weight. See *Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541 (2d Cir. Jan. 19, 2011) (unpublished) (social workers ineligible to receive controlling weight). Indeed, such opinions are not entitled to any particular weight. See *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017) (under the Commissioner's regulations applicable to Plaintiff's claim, nurse practitioners are not considered "acceptable medical sources," and their opinions are therefore not "entitled to any particular weight[.]"). Thus, the only requirement for an ALJ's assessment of an opinion from a non-acceptable medical source is that he or she address and discuss the opinion, which the ALJ did here. (Tr. 26-27). See *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (noting that "the ALJ is empowered with the discretion to afford less than controlling weight, or even no

weight, to the opinion of 'other sources.'" as long as he or she "address[es] and discuss[es] the opinion").

Even if Dr. Lim were to be considered an acceptable medical source, the ALJ reasonably gave his opinion little weight as it stood in direct conflict with the other evidence in the record. See 20 C.F.R. § 404.1527(c)(4) (stating an ALJ must consider whether an opinion is consistent with the record as a whole). The ALJ explained in detail that Dr. Lim's opinion was inconsistent with all clinical findings by Fetes's primary care provider, Dr. Joshua Usen, D.O., and with all other medical opinions from acceptable medical sources, namely consultative internal medical examiner, Dr. David Brauer, M.D., reviewing medical consultant In Tack Seok, M.D., consultative psychological examiner, Dr. Gregory Fabiano, Ph.D., and reviewing psychological consultant, Dr. Carlton Walker, Ph.D. (Tr. 28). See Saxon, 781 F. Supp. 2d at 102 ("The less consistent an opinion is with the record as a whole, the less weight it is to be given."); Woodmancy v. Colvin, 577 F. App'x 72, 75 (2d Cir. Sept. 2, 2014) (ALJ properly assigned little weight to treating source's opinion when contradicted by clinical findings).

The ALJ also reasonably noted that Dr. Lim's opinion was inconsistent with evidence showing Fetes's symptoms improved with treatment and medication. (Tr. 28). See Johnson v. Colvin, 669 F. App'x 44, 46 (2d Cir. 2016) (ALJ reasonably considered a doctor's statement that plaintiff's medical condition had improved with treatment); Clark v. Colvin, 2015 WL 1458628, at *14 (W.D.N.Y. Mar. 30, 2015) (ALJ did not err in affording little weight to treating physician opinion where plaintiff's condition had improved with treatment and medication).

Fetes next argues that the ALJ erred by failing to develop the record fully and therefore made his decision based on incomplete evidence. The Court disagrees.

While the ALJ has a duty to develop the record, that duty is defined by agency regulations, and those regulations were changed, effective 2017, to shift more of the burden to develop the record away from the ALJ and onto claimants and their counsel. Under the regulations, if a claimant or his or her representative wants written evidence considered at the hearing, then they must submit or inform the ALJ about the evidence no later than five business days before the date of the scheduled hearing. 20 C.F.R. § 404.935(a)). The claimant may request that the ALJ issue a subpoena for records, but the claimant must make such request in writing at least ten days before the hearing. 20 C.F.R. § 404.950(d)(2). If a claimant fails to request a subpoena timely, then a subpoena will not be issued, unless prior to the hearing decision being issued, the claimant can show that his or her failure was due to one of the following: (1) an action of the Social Security Administration misled the claimant; (2) the claimant had a physical, mental, educational, or linguistic limitation(s) that prevented submitting or informing the ALJ about the evidence earlier, or (3) some other unusual, unexpected, or unavoidable circumstance beyond the claimant's control prevented the claimant from submitting or informing the ALJ about the evidence earlier. *Id* (cross referencing to 20 C.F.R. § 404.935(b)).

Fetes contends that following the ALJ hearing, she wanted to supplement the record with psychotherapy records from the Kenton Family Support Center (the

"Center"), but the Center refused to provide the records. She then asked the ALJ to subpoena the records, but he refused. She argues that this was clear error by the ALJ.

Fetes's argument must be evaluated in light of the procedural history of the case. The first notice of any additional records from the Center was from Fetes's testimony at the July 29, 2017 hearing, when she said that she had returned to counseling there for several months. (Tr. 15-16). A week after the hearing, on August 4, 2017, Fetes's attorney requested that the record be held open so that she could submit additional records, including those from the Center. The ALJ granted a two-week extension, and admitted additional evidence submitted during that time, but no evidence from the Center was submitted. On the final day of the extension, August 18, 2017, Fetes's counsel requested another two-week extension. About ten days later, on August 29, 2017, counsel requested by letter that the ALJ issue a subpoena for the records as the Center would not provide them to counsel.

The ALJ denied the subpoena request, stating that there were "no unusual, unexpected, or unavoidable circumstances beyond the claimant's control that prevented her from submitting the evidence earlier." (Tr. 16). The ALJ noted that counsel was appointed in January 2017, but counsel failed to make an initial request to the Center for the records until August 10, 2017, nearly two weeks after the hearing. (Tr. 16, 257). The ALJ also stated that based on the evidence already in the record and the hearing testimony, the issuance of a subpoena for the Center records was "not reasonably necessary for the full presentation of the case." (Tr.

16). Indeed, Fetes has failed to show that the Center records would contain any evidence that her condition was markedly different from what was reflected in the treatment notes and evidence already in the record. Based on this record, the Court finds that the ALJ's denial of the requested subpoena was within his discretion and did not constitute error.

Finally, Fetes argues that the ALJ erred by failing to find that her MTHFR[2] mutation was a severe impairment. She further argues that even if her MTHFR condition is not considered severe, the ALJ failed to take it properly into account in determining her RFC. The Court finds this argument without merit.

Fetes cites two records predating the relevant time period from DENT Neurologic Institute that note that she had the DNA variant. (Tr. 281, 287). She fails, however, to cite to any evidence in the record showing any functional limitations resulting from such a genetic mutation. She merely cites to Internet sources of what such a mutation might cause. Moreover, even if the ALJ erred at step two of the sequential evaluation process by not finding that Fetes's MTHFR mutation is a severe impairment, such error was harmless as he continued with the remaining steps of the evaluation process. See *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. Mar. 24, 2010) (unpublished) (errors at step two are harmless so long as the ALJ continues with the sequential analysis); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. May 2, 2013) (unpublished) (where an ALJ proceeds past step two and considers the effects of all of a claimant's impairments through the remainder of the sequential evaluation process, any error at step two is

---

[2] MTHFR or Methylenetetrahydrofolate is an enzyme that breaks down the amino acid homocysteine.

harmless). By failing to provide evidence that this genetic condition caused any functional issues, Fetes failed to meet her burden of showing at step two that it was a severe impairment. See *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (claimant bears the burden at step two of showing that he has a medically severe impairment or combination of impairments). In addition, by failing to show any functional limitations, she also failed to meet her burden to show that the RFC should have included additional restrictions. See *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (plaintiff "had a duty to prove a more restrictive RFC, and failed to do so").

## CONCLUSION

For the reasons stated, Fetes's motion for judgement on the pleadings (Dkt. No. 10) is denied, the Commissioner's motion for judgement on the pleadings (Dkt. No. 13), is granted, and the case is dismissed. The Clerk of Court shall take all steps necessary to close the case.

**SO ORDERED.**

Dated:   May 11, 2020
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge